ANNISTON BROADCASTING COMPANY, Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.

OWOSSO BROADCASTING COMPANY, INC., Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.

Nos. 80–7361, 80–7785.

United States Court of Appeals, Fifth Circuit.*
Unit B

Feb. 26, 1982.

* Former Fifth Circuit case, Section 9(1) of Public      Law 96–452—October 14, 1980.

James E. Greeley, Peter Gutmann, Washington, D. C., for petitioner in No. 80–7785.

Petitions for Review of Orders of the Federal Communications Commission.

Before HILL and HENDERSON, Circuit Judges, and SMITH,** Judge.

PER CURIAM:

Anniston Broadcasting Company and Owosso Broadcasting Company, Inc., petition this court for review[1] of a Memorandum Opinion and Order of the Federal Communications Commission (Commission),[2] denying their petitions for waiver of sections 73.35, 73.240, and 73.636 of the Commission's Rules, which require divestiture of newspaper-broadcast combinations which constitute effective monopolies over their communities' media. In a subsequent proceeding, the Commission stayed the January 1, 1980, divestiture deadline until June 1, 1980.[3]

Anniston Broadcasting Company owns the only daily newspaper, the *Anniston Star*, two radio stations, WHMA–AM and WHMA–FM, and the only local television station, WHMA, in Anniston, Alabama. Owosso Broadcasting Company, Inc., owns a majority interest in the only daily newspaper, *The Argus-Press*, and the only local AM, WOAP, and FM, WOAP–FM, radio stations in Owosso, Michigan. Owosso has no local television station.

Both plaintiffs claim that the Commission improperly refused to grant them divestiture waivers under the Commission's provision for allowing waivers if the policy behind the Commission's divestiture rule would be better served by letting the present ownership continue. However, we find, after hearing oral argument, that the Commission did not err in its denial of the waivers and therefore affirm the Commission's action.

Kirkland & Ellis, James R. W. Bayes, Washington, D. C., Aloysius B. McCabe, Boston, Mass., for petitioner in No. 80–7361.

John E. Ingle, F. C. C., Washington, D. C., Robert B. Nicholson, Daniel J. Conway, Dept. of Justice, Washington, D. C., for respondents in both cases.

** Honorable Edward S. Smith, Judge for the U. S. Court of Claims, sitting by designation.

1. Jurisdiction is founded on 47 U.S.C. § 402(a) (1976) and 28 U.S.C. §§ 2342–2343 (1976).

2. Memorandum Opinion and Order, 74 F.C. C.2d 497 (1979).

3. Memorandum Opinion and Order, 76 F.C. C.2d 339 (1979).

## I.

This case is the progeny of *FCC v. National Citizens Committee for Broadcasting (National Citizens)*.[4] In *National Citizens* the Supreme Court considered the validity of a Commission order, *Rules Relating to Multiple Ownership of Standard, FM, and Television Broadcast Stations, Second Report and Order* (order).[5] The order required that in communities where there was common ownership of the only daily newspaper and the only broadcast station or, if there was more than one broadcast station, of the only daily newspaper and the only television station, divestiture of either the newspaper or the station had to take place by January 1, 1980, unless grounds for a waiver were demonstrated.

The Commission based the adoption of the order on its determination that diversification of mass media ownership serves the public interest by increasing the variety of program and service viewpoints, as well as by limiting the concentration of economic power. However, the Commission also believed that some consideration should be given to those who could give the best practicable service to the public. Therefore the Commission came to the conclusion that divestiture was warranted only in " 'the most egregious cases,' which it identified as those in which a newspaper-broadcast combination has an 'effective monopoly' in the local 'marketplace of ideas as well as economically.' " [6] An effective monopoly occurs where there is common ownership of the only daily newspaper published in the community and either (1) the only broadcast station providing a clear signal to the entire community, or (2) the only television station transmitting a clear signal over the entire community.[7]

However, the Commission also included a waiver provision in the order. This provision allowed for temporary or permanent waivers if the common owner could not sell the station for more than an artificially depressed price; if the community could not support separate ownership; or, more generally, if the purposes of the divestiture rule would be better served by the continuation of the current ownership pattern.

After reviewing the criteria used by the Commission for determining which newspaper-broadcast owners had effective monopolies over their respective communities' marketplace of ideas, etc., the Court held that "the standards settled upon by the Commission reflect[ed] a rational legislative-type judgment." [8]

## II.

■ In the present case, the Commission's initial order [9] first addressed the central defect in plaintiffs' argument for waivers. Both plaintiffs claim that outside broadcasting stations effectively cover plaintiffs' respective communities. The Commission correctly found that plaintiffs failed to demonstrate that these outside stations gave coverage of the activities of the pertinent communities comparable with a local alternative voice. Furthermore, the Commission noted that since the outside stations serviced substantially larger cities and were under no obligation to meet plaintiffs' communities' needs, they could not be used as a basis for waivers.

Second, the Commission considered the economic dominance of Anniston Broadcasting in its community and found that local

4. *FCC v. National Citizens Comm. for Broadcasting*, 436 U.S. 775, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978).

5. 50 F.C.C.2d 1046 (1975), *as amended upon reconsideration*, 53 F.C.C.2d 589 (1975), codified in 47 C.F.R. §§ 73.35, 73.240, 73.636 (1976).

6. *FCC v. National Citizens Comm. for Broadcasting, supra* note 4, 436 U.S. at 787, 98 S.Ct. at 2108, citing the order, *supra* note 5, 50 F.C.C.2d at 1080–81.

7. While an alternative radio station does not exempt a newspaper-television monopoly from divestiture, an alternative television station exempts a newspaper-radio monopoly.

8. *FCC v. National Citizens Comm. for Broadcasting, supra* note 4, 436 U.S. at 814, 98 S.Ct. at 2121.

9. Memorandum Opinion and Order, 74 F.C.C.2d 497 (1979).

advertisers had no satisfactory competitor with which to do business if plaintiff chose to charge an unreasonable advertising rate.

■ Third, the Commission properly found that it was not required to give plaintiffs an evidentiary hearing. The key factor in determining whether a hearing is mandated is "whether the agency's action pertained to a class of individuals, indicating a rule-making function, or whether it focused on a particular individual, indicating an adjudicative function requiring a hearing. [Footnote omitted.]" [10]

Here, the Commission was concerned with a class of entities. The Commission in its reconsideration memorandum gave a brief history of some of the other stations affected by the reconsideration order.[11] Many of these stations had divested or were about to divest themselves of either their newspaper or their station. While not directly discussed in the memorandum, other stations are no longer within the parameters of the order since qualified competitors have entered into their respective markets.

■ Finally, Owosso claims that the Commission improperly refused to grant Owosso a waiver upon the basis of Owosso's trust agreement. We, however, find that the Commission gave full consideration to the terms of the trust and found it wanting. The Commission found that since the trust's termination clause allows the grantor to end the trust the next time the station's license is up for renewal, the trust is disqualified from being an adequate device for reducing plaintiff's control over the station. Furthermore, while we do not itemize them here, the differences between the Owosso trust and the trust in *Rust Craft Broadcasting Co.*[12] are significant enough for the Commission to find that plaintiff's trust did not qualify Owosso for a waiver.

The scope of judicial review of the Commission's actions is limited to whether its decisions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." [13] Furthermore, the Supreme Court has "repeatedly emphasized that the Commission's judgment regarding how the public interest is best served is entitled to substantial judicial deference." [14]

We hold that the Commission met the above standard and we affirm the action of the Commission in all substantive respects.

The cases are remanded to the Federal Communications Commission for the grant of a stay of the divestiture deadline to an appropriate date subsequent to the date of this decision. In view of our decision on the merits, respondents' motion for return of the letter from petitioner Owosso Broadcasting Company, Inc., filed June 15, 1981, is moot.

---

**10.** *Alaska Airlines, Inc. v. C. A. B.*, 545 F.2d 194, 200 (D.C.Cir.1976).

**11.** Memorandum Opinion and Order, 77 F.C.C.2d 54 (1980).

**12.** *Rust Craft Broadcasting Co.*, 68 F.C.C.2d 1013 (1978).

**13.** 5 U.S.C. § 706(2)(A) (1976). See *WAIT Radio v. F. C. C.*, 418 F.2d 1153 (D.C.Cir.1969), for its restatement of the scope of review as requiring the Commission to give a "hard look" at all applicants' requests for waivers.

**14.** *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 596, 101 S.Ct. 1266, 1275, 67 L.Ed.2d 521 (1981).